## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JAIME ALVAR CARVAJAL, | § | |
| #10301-078, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:20-CV-567-S-BK |
| | § | |
| UNITED STATES OF AMERICA, ET AL., | § | |
| DEFENDANTS. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. The Court granted *pro se* Plaintiff Jaime Alvar Carvajal's motion to proceed *in forma pauperis* but did not issue process pending judicial screening. Doc. 8. Upon review of the relevant pleadings and applicable law, this action should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim.

### I.  BACKGROUND

This case arises from the revocation of a previously imposed term of supervised release. In 2019, following Carvajal's plea of true to a violation report, the Court revoked his supervision and sentenced him to 12 months' imprisonment. *See United States v. Carvajal*, No. 3:19-CR-165-B-1 (N.D. Tex. May 16, 2019); Crim. Doc. 18. The judgment revoking supervision was subsequently affirmed on appeal. *United States v. Carvajal*, 792 F. App'x 351 (5th Cir. 2020).

On March 4, 2020, Carvajal filed a civil rights complaint under *Bivens*[1] and 42 U.S.C. § 1983 against the United States of America, the U.S. Department of Justice, the U.S. Office of Probation, and Probation Officer Beau Morris, in his individual and official capacities. Doc. 3 at 1. Carvajal seeks monetary damages for alleged violations of his constitutional rights to due process and equal protection under the Fourteenth Amendment, as well as the Eighth Amendment prohibition against cruel and unusual punishment. Doc. 3 at 1, 17. Specifically, he complains that he was subjected to sexual harassment, abuse, and violations of his privacy by Defendant Morris during a procedure to collect a specimen for urinalysis in March 2019. Doc. 3 at 1. Allegedly, when Carvajal was unable to produce a urine sample due to a medical condition, Morris "demand[ed] that [Carvajal] remove his clothing, expose his genitals, and allow the officer to observe him without clothing for an extended and uncomfortable period of time." Doc. 3 at 3-4; *see also* Doc. 3 at 7 (claiming Morris humiliated [him] by "demanding that he … remove his penis and place it over the top of his underwear ….").

As Carvajal describes the incident:

> The probation officer at the time of the second attempt toward collection of a proper urine sample, stepped outside of proper protocol following this delay, and began to verbally abused him by forcing him to perform outlandish acts and activities such as, demanding the Probate crouch down, unbuckle his pants in front of the officer, drop his pants entirely to his knees, lift up his shirt so the officer may have a better view, demand that the penis be taken out but not through the front opening in the underwear, but rather, over the top of the underwear where the officer may have a clear look at the penis. The officer continued to harass by demanding the Probate turn around, face the officer, show his penis unobstructed, and then starring [sic] at the genitalia of the Plaintiff for a lengthy period of time without explanation or cause. When the Probate attempted to turn back away from the Line of sight of the officer, or to simply return to a position of privacy by replacing his penis to his pants, the officer resisted and demanded that the Probate remain naked, exposed,

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that federal officers acting under color of law are liable for damages for certain violations of the United States Constitution).

and standing at attention for the officer to continue to maintain line-of-sight despite no urine test actually being conducted at that moment.

Finally, the Probate, acting out of emotional stress and embarrassment, demands, "is that what you want?" to which, the officer acknowledges in a soft-feminine voice as he rolls his eyes back, "yes, that's nice." The Probate was now in a compromising position because he could likely be violated for any protest or resistance. Nevertheless, the Probate then responded out of anger and emotional stress by stating, something to the effect of, "what are you some kind of fucking faggot?" The officer then began to make notes within his file that likely would result, and did result in retaliation and eventual revocation of Supervised Release despite the fact that the Probate did not fail any test, and did not act out of resistance. The Officer, Beau Morris, subsequently changed the language of his report to reflect that his personal statement back to the Probate regarding the penis comment, "is that what you want?" to which he noted that he did not respond with, "yes, that's real nice," to "yea, that's real nice (sarcastic)."

Doc. 3 at 15-16.

Carvajal claims that fearing a likely sexual assault, he filed an "informal complaint" against Morris with the Probation Office supervisor, and that his father subsequently filed a "formal complaint" with the U.S. Department of Justice Office of the Inspector General, complaining of the alleged sexual harassment during the urinalysis. Doc. 3 at 8, 16; Doc. 3-1 at 19-26 (father's correspondence). Morris supposedly retaliated against Carvajal for complaining by (1) filing the violation report, which eventually resulted in the revocation of Carvajal's supervision, and (2) placing an "'Adam Walsh' sex offender flag" in his public records without justification. Doc. 3 at 8-9.

Because Carvajal requests damages against federal defendants, the Court interprets his allegations as raising violations of the Eighth and Fifth Amendments. *See Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (finding claims against federal defendants arose under the Fifth Amendment rather than the Fourteenth Amendment, the latter protecting only against actions by states). Also, because 42 U.S.C. § 1983 does not provide a cause of action against federal

officials acting under color of federal law, *Roots v. Callahan*, 475 F.2d 751, 752 (5th Cir. 1973), the Court does not address Carvajal's attempt to plead a § 1983 claim.

Moreover, the Court concludes that Carvajal's claims against the United States, its agencies and Morris, in his official capacity, are barred by sovereign immunity and that his individual capacity claims against Morris are not authorized under *Bivens*. As such, Carvajal's complaint lacks facial plausibility and should be dismissed.

## II. ANALYSIS

Because Carvajal is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for the *sua sponte* dismissal of a complaint if, *inter alia,* it fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

The Court must always liberally construe pleadings filed by *pro se* litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Even under the most liberal construction, however, Carvajal's complaint, as supplemented by his sworn answers to the *Magistrate Judge's Questionnaire*, fails to state a claim.

### A.  U.S. Government, Federal Agencies and Official Capacity Claims are Barred

Under the doctrine of sovereign immunity, the United States Government cannot be sued unless it gives its consent. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) ("the United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit" (quotations and citations omitted)).  Carvajal offers no legal authority permitting suit against the United States (which includes the Department of Justice and the U.S. Probation Office) for sexual harassment and retaliation.  Likewise, his official capacity claims against Morris are barred by sovereign immunity because Morris' actions in his official capacity are considered those of his federal agency employer (the U.S. Probation Office).  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) ("Official-capacity suits … 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (citations omitted).  Moreover, neither the Department of Justice, the U.S. Probation Office, nor Morris in his official capacity is subject to suit under *Bivens*.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 484-86 (1994) (holding federal agency cannot be sued under *Bivens*).

### B.  *Bivens* Does not Extend to the Individual Capacity Claims Against Morris

The Supreme Court has developed a two-part test to determine if a *Bivens* claim may proceed.  *Ziglar v. Abbasi*, — U.S. —, 137 S. Ct. 1843, 1843 (2017).  As recounted by the Court of Appeals for the Fifth Circuit, because *Bivens* is a judicially crafted remedy, and not a statutory one like 42 U.S.C. § 1983, courts should consider (1) whether the case "presents a new context" and, if it does, (2) whether "there are any special factors that counsel hesitation about granting the extension."  *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (finding "the *Bivens* question is antecedent" to other issues in a case, including qualified immunity (internal quotations and citations omitted)).  The Supreme Court has also strongly counseled against extending *Bivens* to new contexts, *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020), and repeatedly held that such extensions are "a 'disfavored' judicial activity."  *Ziglar*, 137 S. Ct. at 1857; *see also Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020)  ("Bivens was the product of an '*ancient regime*' that

5

freely implied rights of action" and that "ended long ago.") (emphasis in original), *pet. for cert. filed*, No. 20-1060 (Feb. 3, 2021).

      1.  *Carvajal's Claims Present a New Context*

In analyzing "whether [a] case presents a new context, [the court] must determine whether [it] falls squarely into one of the established *Bivens* categories, or if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Byrd v. Lamb,* 990 F.3d 879, 882 (5th Cir. 2021) (cleaned up) (quoting *Oliva*, 973 F.3d at 442). The Supreme Court has extended *Bivens* claims to only those arising from three specific factual scenarios:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90, 91 S. Ct. 1999; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).

*Oliva*, 973 F.3d at 442. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" … "because 'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Id.* (citations omitted).

When examining whether a case differs significantly, courts may consider the Constitutional right in question, the statutory or other legal basis for the officer's actions, or the existence of latent special factors that prior *Bivens* cases did not contemplate. *Ziglar*, 137 S. Ct. at 1860. Moreover, "it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *Oliva*, 973 F.3d at 442 (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

The instant case does differ significantly from the *Bivens* trilogy of actions sanctioned by the Supreme Court. First, it obviously does not involve claims of unreasonable search and

seizure in violation of the Fourth Amendment, as did *Bivens*.  And although Carvajal premises

his claims on alleged violations of the Eighth and Fifth Amendments, as did the plaintiffs in

*Davis* and *Carlson*, his case differs significantly from theirs.  Carvajal was an offender on

supervised release—he was not incarcerated—and his claims concern alleged sexual harassment

and retaliation by a probation officer during a urinalysis, not the denial of medical care by prison

officials as in *Carlson*.  Likewise, Carvajal was clearly not an "employee" within the meaning of

federal employment protection statutes, as was the plaintiff in *Davis*.  Lastly, none of the three

cases in which the Supreme Court recognized a *Bivens* remedy was brought against probation

officers.  Based on these differences, this case presents a new context.

   *2.  Special Factors Counsel Against Extending Bivens to this New Context*

   Special factors counsel against extending *Bivens*.  The special-factor analysis focuses on

whether "the Judiciary is well suited, absent congressional action or instruction, to consider and

weigh the costs and benefits of allowing a damages action to proceed" against federal officers.

*Ziglar*, 137 S. Ct. at 1857.  Generally, Congress, rather than the courts, is better suited to

authorize a damages suit.  *Id.*  With that in mind, several special factors counsel against

extending *Bivens* in the context of this case.

   First, the Federal Tort Claims Act ("FTCA"), provides a potential, alternative remedy,

and militates against expansion of a *Bivens* remedy.  *See Ziglar*, 137 S. Ct. at 1865 ("the

existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.").

The FTCA waives the Government's sovereign immunity from tort claims that arise from the

negligent or wrongful acts or omissions of federal employees in the course of their employment.

28 U.S.C. §§ 1346(b)(1), 2679(b)(1).

Importantly, "the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would," and the mere fact "[t]hat the FTCA might not give [the plaintiff] everything he seeks is … no reason to extend *Bivens*."  *Oliva*, 973 F.3d at 444.  *See also Ziglar*, 137 S. Ct. at 1863 ("when alternative methods of relief are available, a *Bivens* remedy usually is not"); *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation.").

Instructively, the plaintiff in *Oliva* had fully exhausted his administrative remedies with the Veterans Administration (VA) before suing the United States under the FTCA and the individual VA officers under *Bivens* for damages arising from a physical altercation that led to his arrest.  *Oliva*, 973 F.3d at 444; 28 U.S.C. § 2680(h).  The Court of Appeals for the Fifth Circuit found that the FTCA was "an alternative remedial scheme for [the plaintiff's] claims" even if it did not cover his constitutional tort claim for excessive use of force under the Fourth Amendment.  *Oliva*, 973 F.3d at 444.  Carvajal, like the plaintiff in *Oliva*, could have sued Defendants under the FTCA, after first exhausting his administrative remedies.[2]  *See* 28 U.S.C. §§ 1346(b)(1) & 2679(b)(1).  Carvajal's decision not to avail himself of the FTCA does not negate the availability of the FTCA as a potential remedy in his case.  *See Oliveras v. Basile*, 440 F. Supp. 3d 365, 374 (S.D.N.Y. 2020) (finding the FTCA was an alternative remedy and, thus, a special factor counseling hesitation, even though the FTCA's discretionary function exception

---

[2] The FTCA conditions the availability of a damages claim on the exhaustion of administrative remedies.  *Oliva*, 973 F.3d at 444; 28 U.S.C. § 2675(a).

barred the claims against the government and the plaintiff was left "essentially without a remedy"). Simply stated, it is "the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson v. Griesa*, 398 F.3d 156, 167 (2d Cir. 2005) (citing *Schweiker*, 487 U.S. 412, 421-22).

Another special factor instructive here is whether there are "other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy in a suit like this one." *Ziglar*, 137 S. Ct. at 1865. To be sure, claims against federal probation officers run the risk of interfering with the supervision of offenders released back to the community.

Supervising offenders following their release from incarceration obviously is not an easy task. Because they are often vulnerable to breaking the law, federal probation officers are expected to maintain close surveillance of such offenders and verify that their behavior remains within legal bounds and is consistent with the court-imposed conditions of release. Here, Carvajal was required as a condition of his supervised release to submit his urine for testing for illicit substances. His retaliation and sexual harassment claims stem from his alleged inability to provide a urine sample, which ultimately resulted in a charge of violating a condition of his supervised release. *See* Crim. Doc. 18 at 1.[3] Supervision-based *Bivens* claims like this, even as fanciful as Carvajal's, could possibly interfere with the difficult responsibilities of probation officers. Consequently, the Court concludes that there are sound reasons to think Congress would question the need for a damages remedy against probation officers attempting to obtain a urine specimen from a supervisee. *Cf. Atwood v. Burke*, 17CV1315-MMA (BLM), 2019 WL

---

[3] All "Crim. Doc." citations refer to the related criminal case: *United States v. Carvajal*, No. 3:19-CR-28 (N.D. Tex. Sept. 14, 2018).

1427744, at *5–6 (S.D. Cal. Mar. 29, 2019) (declining to recognize a *Bivens* remedy against a probation officer for denying an offender's request to move to a different district to obtain treatment and surgery), *aff'd sub nom. Smith-Garcia v. Burke*, 815 F. App'x 187 (9th Cir. 2020), *cert. denied*, 20-7157, 2021 WL 1073874 (U.S. Mar. 22, 2021); *Barrett v. Idstein*, 17-CV-610-JDP, 2018 WL 1124210, at *3 (W.D. Wis. Feb. 26, 2018) (declining to extend *Bivens* to permit a claim against federal probation officers for violation of the right to marriage).

Relatedly, another special factor counseling hesitation here "is the length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this" and other contexts. *See Oliva*, 973 F.3d at 444 (finding that Congress' failure to "make individual officers statutorily liable for excessive-force claims" was pertinent to a special factors analysis); *Cantu*, 933 F.3d at 423 (suggesting that "failure to provide a damages remedy" in the immigration context was "more than mere oversight"). Extending a *Bivens* remedy to the post-incarceration supervision context would undoubtedly permit a myriad of lawsuits from supervised releasees seeking monetary damages from probation officers for constitutional violations stemming from the application of conditions of supervised release. And while Congress has the authority to create such a cause of action against federal probation officers, it has yet to do so.

3.   *Failure to State Plausible Constitutional Claims is an Additional Reason to Hesitate*

Notwithstanding the special factors discussed *supra*, there is another sound reason to exercise caution here. Even discounting the scurrilous nature of the allegations against Defendant Morris and accepting them as true for argument sake, Carvajal fails to state plausible constitutional claims. "[T]he lack of merit of the claims … and whether to find a remedy merge to weigh against the creation of a *Bivens* remedy." *Nabaya v. Bureau of Prisons*, No. 3:19-CV-215-L-BN, 2020 WL 7029909, at *4 (N.D. Tex. Oct. 7, 2020), *R. & R. adopted*, 2020 WL

7027470 (N.D. Tex. Nov. 30, 2020) (cleaned up) (quoting *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017), *aff'd*, 755 Fed. Appx. 67 (2d Cir. 2018)); *see also Oliveras*, 440 F. Supp. 3d at 373-75 (declining to extend *Bivens* for a claim that rested on "a shaky legal foundation").

Here, Carvajal's Eighth Amendment claims are clearly frivolous. As previously noted, the Eighth Amendment applies only to deprivations suffered by prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Carvajal was not incarcerated when the events in question occurred. His assertions to the contrary in his *Answers to Magistrate Judge's Questionnaire* lack support and are frivolous. Doc. 10 at 4 (contending he "was NOT in a position to remove himself from the 'custody' of the probation officer at the time of questioning and testing" and that the constraints of supervised release qualify as a "seizure" (emphasis in original)).

Likewise, Carvajal's equal protection and substantive due process allegations are conclusory and amount to "nothing more than a formulaic recitation of the elements" of a constitutional claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citations omitted). In essence, Carvajal asserts in conclusory fashion that the "acts of sexual harassment and abuse" deprived him of his right to equal protection. Doc. 3 at 1; *see also* Doc. 3 at 18 (relying on employment discrimination cases). To establish an equal protection violation, however, Carvajal "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) ("the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."). Carvajal does not allege that Morris intentionally treated him differently during the urinalysis, and also fails to identify any similarly situated offender or group of offenders who received more favorable treatment.

With respect to his substantive due process claim, Carvajal again offers only conclusory allegations. He avers that, "as a 'probate' under the custody and supervision of the Office of Probation … he is subject to risk of retaliation and loss of rights, and specifically, his right to freedom should he ignore or defy a direct order by or through his Probation Officer." Doc. 3 at 11. In his *Answers to Magistrate Judge's Questionnaire*, Carvajal explains that "Morris caused Plaintiff a loss of due process rights upon his initial act of sexual advancement followed by [Carvajal's] inability to defend himself." Doc. 10 at 3. He avers that Morris "neglected professional protocols" and placed "the Walsh Act Block on [him] without an indictment or trial and conviction," which in and of itself is an alleged "violation of Due Process protection." Doc. 10 at 3; *see also* Doc. 10 at 7 ("Plaintiff's record was tarnished with this illegal [Walsh Act] designation without due process of law."). Further, Carvajal contends that he "became a victim" as a result of the "retaliation and subsequent incarceration" he endured. Doc. 10 at 3. In light of his *pro* se status, the Court liberally construes his *Answers to Magistrate Judge's Questionnaire* to raise both substantive and procedural due process violations, although his complaint mentions only substantive due process.

The relevant portion of the Fifth Amendment provides: "No person shall be … deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V; *see also Hernandez v. United States*, 757 F.3d 249, 267 (5th Cir. 2014) (quoting Fifth Amendment's due-process clause). "This constitutional protection contains both a substantive and a procedural component." *Hernandez*, 757 F.3d at 267. "The substantive component prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty, whereas the procedural component ensures that any government action surviving substantive due process scrutiny is implemented in a fair manner."

*Id.* (internal quotation marks omitted) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  Conduct that courts have found to violate substantive due process include:  the forced pumping of a suspect's stomach, *Rochin v. California*, 342 U.S. 165, 172-73 (1952); forcing a citizen "to travel at speeds over 100 mph in their attempt to flee a terrorizing police officer," *Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986); terrorizing a mother and her two young children by screaming at them, trying to smash their windows with a nightstick, and firing at their tires during a routine traffic stop, *Petta v. Rivera*, 143 F.3d 895, 897–903 (5th Cir. 1998).  What Carvajal claims is not nearly as egregious.

Even liberally construed, Carvajal's allegations--basically that the probation officer closely observed his attempt to provide a urine sample and made an inappropriate comment during the procedure—do not raise a plausible substantive due process claim.  Basically, Carvajal offers nothing more than his belief that Morris' comment violated his rights to substantive due process.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or "a formulaic recitation of the elements of a cause of action will not do.").  Moreover, insofar as Carvajal claims a procedural due process violation regarding the so-called "Walsh Act block," he does not allege that Morris deprived him of any life, liberty, or property interest, nor does he explain how Morris' purported actions deprived him of notice or an opportunity to be heard. Moreover, injury to reputation or character alone is insufficient to invoke due process protection. *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Davis v. City of Aransas Pass*, 605 F. App'x 429, 430 (5th Cir. 2015).

In addition, Carvajal only vaguely asserts any privacy claim.  In his *Answers to Magistrate Judge's Questionnaire*, he simply alleges violations of his "privacy … [and] HIPPA Laws upon [the] exposure of his urinary and testicular condition …."  Doc. 10 at 2.  However,

his statement is conclusory and, as such, Carvajal again fails to meet the necessary standard to properly state a claim for relief. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In sum, Carvajal does not plead sufficient facts that could plausibly give rise to a reasonable inference that Morris violated his constitutional rights. Based on this reason and the special factors, including the potential, alternative remedy previously discussed, *Bivens* should not extend to Carvajal's claims against Morris.

## III.    LEAVE TO AMEND

Generally "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, the Court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id.* For the reasons outlined here, Carvajal's claims are fatally infirm. In addition, the Court has already given him the opportunity to supplement his complaint by his *Answers to Magistrate Judge's Questionnaire*. Thus, the Court concludes Carvajal has already pled his best case and granting leave to amend would be futile and cause needless delay.

## IV.    CONCLUSION

For the foregoing reasons, this action should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**SO RECOMMENDED** on May 11, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

14

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).